IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BROOKE LAYTON, individually and on behalf of all others similarly situated, | § § § § § § § § § § § § § | CIVIL ACTION NO. 3:21-cv-01636-N |
| Plaintiff, | | |
| vs. | | |
| MAINSTAGE MANAGEMENT, INC., NICK'S MAINSTAGE, INC. - DALLAS PT'S d/b/a PT'S MENS CLUB and NICK MEHMETI, | | COLLECTIVE ACTION JURY TRIAL DEMANDED |
| Defendants. | | |

DEFENDANTS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

                    Respectfully submitted,

                    SHEILS WINNUBST
                    A Professional Corporation

By:    */s/ Latrice E. Andrews*
        Latrice E. Andrews
        State Bar No. 24063984

1100 Atrium II
1701 N. Collins Boulevard
Richardson, Texas  75080
Telephone No.: (972) 644-8181
Telecopier No.: (972) 644-8180
*latrice@sheilswinnubst.com*

AND

ROGER ALBRIGHT, LLC
Of Counsel to:
SHEILS WINNUBST, PC


By:    */s/ Roger Albright*
        Roger Albright
        State Bar No. 00974580

1100 Atrium II
1701 N. Collins Boulevard
Richardson, Texas  75080
Telephone No.: (972) 644-8181
Telecopier No.: (972) 644-8180
*roger@sheilswinnubst.com*

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

On the 26th day of July, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and parties of record electronically or by another means authorized through Federal Rule of Civil Procedure 5(b)(2) and Local Rule 7.2.

                                          */s/ Latrice E. Andrews*
                                          Latrice E. Andrews

TABLE OF CONTENTS

Certificate of Service..................................................................................................................2

Table of Contents.....................................................................................................................3

Index of Authorities.................................................................................................................4

Summary..................................................................................................................................5

Procedural Background............................................................................................................6

Legal Standard.........................................................................................................................6

Summary Judgment Evidence..................................................................................................7

Background Facts....................................................................................................................8

Argument................................................................................................................................13

Prayer for Relief.....................................................................................................................20

INDEX OF AUTHORITIES

**STATUTES**

29 U.S.C. §207(a)(1)....................................................................................................................13

Tex. Civ. Prac. & Rem. Code §38.001, *et seq*..............................................................................20

**U.S. SUPREME COURT**

*Am. Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304 (2013)..................................................18

**FIFTH CIRCUIT COURT OF APPEALS**

*Johnson v. Heckmann Water Resources (CVR), Inc.*, 758 F. 3d 627 (5th Cir. 2014).......................14

*Nelson v. SUGARS*, No. 19-20567 (5th Cir. 2020).........................................................................15

*Carter v. Countrywide Credit Indus., Inc.*, 362 F. 3d 294 (5th Cir. 2004)..........................................18

**FOURTH CIRCUIT COURT OF APPEALS**

*In re Family dollar FLSA Litig.,* 637 F. 3d 508, 519 (4th Cir. 2011)..................................................19

**SECOND CIRCUIT COURT OF APPEALS**

*Cohen v. UBS Financial Services, Inc.,* 14-781-cv (2d Cir. Jun. 30, 2015)....................................18

**FEDERAL DISTRICT COURT**

*Norton v. Tucker Entertainment, LLC,*
    No. 3:14-cv-01490-G, (ECF Doc. 15) (N.D. Tex. Oct. 8, 2014).....................................19

*TEXAS DISTRICT COURT CASES*

*Windhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*,
    422 S.W.3d 821 (Tex. App.–Dallas 2014, no pet.)................................................................15

*Hackberry Creek Club, Inc. v. Hackberry Homeowner's Ass'n*,
    205 S.W.3d 46 (Tex. App.–Dallas 2006, pet. denied).........................................................15

*Buxani v. Nussbaum*, 940 S.W.2d 350 (Tex. App.–San Antonio 1997, writ denied).........................16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BROOKE LAYTON, individually and on behalf of all others similarly situated, §§§§§ | | |
| Plaintiff, § | | CIVIL ACTION NO. 3:21-cv-01636-N |
| vs. §§§ | | |
| MAINSTAGE MANAGEMENT, INC., NICK'S MAINSTAGE, INC. - DALLAS PT'S d/b/a PT'S MENS CLUB and NICK MEHMETI, §§§§§§ | | COLLECTIVE ACTION JURY TRIAL DEMANDED |
| Defendants. § | | |

### DEFENDANTS' BRIEF IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

COME NOW, MAINSTAGE MANAGEMENT, INC. ("Mainstage"), NICK'S CLUBS, INC., f/k/a ADVENTURE PLUS ENTERPRISES, INC., d/b/a/ PT MEN'S CLUB (the "Club") and NICK MEHMETI ("Mehmeti"), (collectively, the "Defendants") and file this, their Brief in Support (the "Brief") of Defendants' Motion for Summary Judgment (the "Motion"), and respectfully show the Court as follows:

### I. SUMMARY

1.   Defendants move for summary judgment on Plaintiffs Brooke Layton ("Layton") and Ashlynn Shipley's ("Shipley"), (collectively, the "Plaintiffs") claims under the Fair Labor Standards Act ("FLSA") on the following grounds: (a) Plaintiffs admit they are not entitled to overtime, thereby such claims fail as a matter of law; (b) Mainstage is not a joint employer or liable under an enterprise theory under the FLSA; (c) under the economic realities test, Plaintiffs are not employees of the Club

and (d) Defendants have established their breach of contract counterclaims. The undisputed facts demonstrate that summary judgment is proper on these issues.

## II. PROCEDURAL BACKGROUND

2. Plaintiff Layton filed her Original Complaint [Doc. 1] on July 15, 2021, and later filed an Amended Complaint adding Plaintiff Shipley [Doc. 21] on January 20, 2022 (the "Complaint").

3. The Complaint alleged, among other things, that Plaintiffs are entitled to recover under the Fair Labor Standards Act for unpaid overtime, purported "illegal kickbacks" and asserted that Mainstage was liable as an employer.[1]

4. This case is set for trial on October 24, 2022.[2]

5. The discovery period closes on July 26, 2022.[3]

6. The deadline to file dispositive motions, is on or before July 26, 2022, and therefore this Motion and Brief are timely filed.[4]

## III. LEGAL STANDARD

7. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if the movant shows that no genuine dispute as to any material fact exists and that the movant is entitled to judgment as a matter of law.[5] A factual issue is material if its resolution could affect the outcome of the case.[6] The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor

---

[1] *See generally*, the Complaint.

[2] Scheduling Order [Doc. 14], para. 1.

[3] Scheduling Order [Doc. 14] para. 3(e).

[4] Scheduling Order [Doc. 14], para. 3(f).

[5] Fed. R. Civ. P. 56(a).

[6] *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F. 3d 233, 235 (5th Cir. 2003).

of the nonmoving party.[7] Unsubstantiated assertions, improbable inferences and unsupported speculation are insufficient to defeat a motion for summary judgment.[8] If after the nonmovant has been given an opportunity to raise a genuine factual issue, the record taken as a whole could not lead a rational trier of fact to find for the non-movant, then there is no genuine issue for trial.[9]

## IV. SUMMARY JUDGMENT EVIDENCE

8. Defendants' Motion and Brief are supported by the pleadings on file with the Court at the time of the hearing, and the following documents on file and/or filed simultaneously herewith in the Appendix in Support of Defendants' Motion for Summary Judgment (the "Appendix") and incorporated by reference herein:

*\* ECF 37, Appendix in Support of Threshold Motion for Summary Judgment*

**Exhibit A:** Declaration of Nick Mehmeti dated May 11, 2022 (the "Mehmeti Declaration");

**Exhibit A-1:** Licensing Agreement between Brooke Layton and Pts Mens Club dated January 3, 2019 ("Layton Licensing Agreement");

**Exhibit A-2:** Licensing Agreements between Ashlynn Shipley and PT's Mens Club dated January 25, 2018, January 2, 2019 and January 23, 2020 (the "Shipley Licensing Agreements");

**Exhibit B:** Excerpts and Exhibit 4 from the Deposition of Brooke Layton dated February 11, 2022 (the "Layton Depo."); and,

**Exhibit C:** Brooke Layton's Notice of Opt-in and Ashlynn Shipley's Consent to Sue Form filed on September 30, 2021 [ECF No. 16 and 16-1] ("Consent to Sue Form")

---

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[8] *Brown v. City of Houston*, 337 F. 3d 539, 54` (5th Cir. 2003).

[9] *DIRECTV, Inc. v. Minor*, 420 F. 3d 546, 549 (5th Cir. 2005).

*ECF 50, Appendix in Support of Threshold Motion for Summary Judgment*

**Exhibit D:** Plaintiffs' First Amended Disclosures Served on ("Pls' Disclosures");

**Exhibit E:** Plaintiff Brooke Layton's Objections and Responses to Defendant Mainstage Management, Inc.'s First Request for Production ("Plaintiff Layton's Production");

*Appendix in Support of Motion for Summary Judgment (Filed Contemporaneously)*

**Exhibit F:** Deposition of Nick Mehmeti dated July 7, 2022 (the "Mehmeti Depo. I"); and,

**Exhibit G:** Excerpts from the Deposition of Nick Mehmeti dated March 9, 2022 (the "Mehmeti Depo. II"); and,

**Exhibit H:** Deposition of Brooke Layton dated February 11, 2022 (the "Layton Depo.").

9. Defendants hereby place all parties hereto on notice of their intent to use the evidence described in paragraph 8 above, as summary judgment proof, some or all of which may not currently be on file with the court.

## V. BACKGROUND FACTS

**A. Plaintiff Layton**

10. Plaintiff Layton entered into a Licensing Agreement to perform at the Club on January 3, 2019.[10]

11. Plaintiff Layton seeks to recover for the period from July 14, 2018, through November 27, 2019.[11]

12. Plaintiff Layton stated in her deposition that she averaged 24 to 32 hours per week, an average shift of six hours, four shifts per week.[12]

---

[10] *See* the Layton Depo. at 36:20-26:7 and 28:3-6; *see also* Exhibit 4 of the Layton Depo.

[11] *See* the Pls' Disclosures at p. 5.

[12] *See* the Layton Depo. at 34:21-13.

13. Plaintiff Layton further confirmed asserted in her Initial Disclosure responses that she worked on average 4 shifts per week of 8 hours, for a total average of 32 hours per week.[13]

14. Plaintiff did not keep records of the money she made while at the Club.[14]

15. Plaintiff Layton admits that prior to filing this lawsuit, she did not notify the Club of her desire to be converted to an employee.[15]

16. The Layton Licensing Agreement contains a collective action waiver.[16]

17. Plaintiff Layton filed a lawsuit seeking to bring and/or participate in a collective action.[17]

18. Plaintiff Layton did not keep a record of exactly how much money she made while working at the Club.[18]

**B. Plaintiff Shipley**

19. Plaintiff Shipley entered into Licensing Agreements to perform at the Club on dated January 25, 2018, January 2, 2019 and January 23, 2020 (the "Shipley Licensing Agreements").[19]

20. Plaintiff Shipley seeks to recover for the period from September 30, 2018, through March 31, 2020.[20]

---

[13] *See* the Pls' Disclosures at p. 5.

[14] *See* the Layton Depo. at 59:1-6, 10-13; 67:20-25.

[15] *See* the Licensing Agreement at ¶22, attached to the Appendix at Exhibit A-1.

[16] *See* the Licensing Agreement at ¶22, attached to the Appendix at Exhibit A-1.

[17] *See* the Layton Depo. at 61:20-22.

[18] *See* the Layton Depo. at 59:1-3.

[19] *See* the Shipley Licensing Agreements, attached to the Appendix at Exhibits A-2.

[20] *See* the Pls' Disclosures at p. 6.

21. Plaintiff Shipley further confirmed in her Initial Disclosure responses that she worked on average 4 shifts per week of 8 hours, for a total average of 32 hours per week.[21]

**C.    Undisputed Facts Related to the Economic Realities Test.**

22. Plaintiff Layton testified that she was given the option between being an employee or an independent contractor but did not seem that an employee arrangement was suitable for dancers.[22]

23. Dancers were able to charge more for dances if they desired, though the normal amount was $20.00.[23]

24. Plaintiff Layton testified that she and her clients decided how many lap dances could be bought or given.[24]

25. Plaintiff Layton also testified that if it was more profitable to not be on stage, she would opt not go, thus giving her the autonomy to determine whether it was more profitable to perform on the stage or on the floor.[25]

26. Plaintiff Layton testified that she had flexibility to decide whether or not to be nude, as some days that would be more profitable than others or she would not feel like being nude so would not perform nude.[26]

---

[21] *See* the Pls' Disclosures at p. 6.

[22] *See* the Layton Dep at 19:18-20:10.

[23] *See* the Layton Dep at 48:4-7; *see* the Licensing Agreements at ¶12, attached as Exhibits A-1 and A-2; see the Mehmeti Depo. II at 14-20-15:14..

[24] *See* the Layton Depo. at 95:13-22, 24:25-96:11.

[25] *See* the Layton Depo. at 89:13-90:4.

[26] *See* the Layton Depo. at 96:22-97:16, 23-25.

27. Though Plaintiff Layton testified that no skills were required to perform at the Club,[27] she also acknowledged that she had a skill of dancing and used those skills in performing at the Club.[28]

28. Plaintiff Layton testified that she was performing at Her Sins Burlesque and Cabaret while she danced at the Club.[29]

29. Plaintiff Layton testified that during 2019 and 2020, she also performed at the Mens Club in Dallas, Bucks Cabaret in Dallas, and Bucks Wild in Dallas, which are all exotic entertainment clubs.[30]

30. Plaintiff Layton testified that she would demonstrate initiative by contacting customers so that the customer knew they were at the Club.[31]

31. Plaintiff Layton testified that dancers could pick the genre of music to dance to and her clients could choose songs if they paid the DJ.[32]

32. Mr. Mehmeti testified that the music was chosen by the dancers, but limited to the songs that are available under the music license the Club has with ASCAP and BI.[33]

33. Plaintiff Layton testified that she sometimes chose to leave early and pay the fee from leaving a set shift for her mental health.[34]

---

[27] See the Layton Dep at 50:6-8.

[28] See the Layton Depo. at 44:25-45:2.

[29] See the Layton Depo. at 39:18, 21-25.

[30] See the Layton Depo. at 51:24-52:15.

[31] See the Layton Dep. at 47:12-14.

[32] See the Layton Depo. at 47:19-48:3.

[33] See the Mehmeti Depo. II at 30:19-31:11.

[34] See the Layton Depo. at 33:18-24.

34. Plaintiff Layton paid for her own supplies, such as outfits, shoes and cell phone and took deductions for such expenses on her tax returns.[35]

35. Mr. Mehmeti testified that dancers wear what they want to and the dancers make sure that they look proper, but there is no standard by the Club.[36]

36. Mr. Mehmeti testified that the Club sometimes operated without exotic dancers and was also a restaurant.

**D.  Mainstage Management is Not Liable as an Employer.**

37. Plaintiff Layton is not aware of Mainstage Management of how it is involved with the Club, if at all.[37]

38. Mr. Mehmeti, the owner of Mainstage Management, testified that this entity does bookeeping and accounting for different businesses.[38]

39. Furthermore, Mainstage Management does accounting for businesses that Mr. Mehmeti does not own as well.[39]

40. Mainstage Management does not keep track of documents or employment records of the Club.[40]

41. The Sign-in Sheets are maintained in the office of the Club or in storage of the Club, but eventually goes to Mainstage Management to review for bookeeping purposes.[41]

---

[35] *See* the Layton Depo. at 46:6-12; 47:1-2; 47:10-16.

[36] *See* the Mehmeti Depo. II at 38:11-39:17.

[37] *See* the Layton Depo. at 65:14-22 and 66:10-12.

[38] *See* the Mehmeti Depo. I at 13:7-11.

[39] *See* the Mehmeti Depo. I at 14:3-6.

[40] *See* the Mehmeti Depo. I at 15:4-8.

[41] *See* the Mehmeti Depo. I at 15:9-20.

42. Mr. Mehmeti testified that Mainstage Management is not involved in the hiring or firing of the dancers and the only involvement of Mainstage Management in the Club is the bookkeeping and accounting.[42]

43. Mr. Mehmeti testified the records in storage are maintained by the Club, that the Club retrieves its records from storage and sets up how the files are indexed and organized.[43]

44. Mr. Mehmeti testified that Mainstage Management is only accounting for the Club and other businesses, and has no say-so in the rules or policies of the Club.[44]

## VI. ARGUMENT

### A. Plaintiffs Concede that Despite their Pleadings, they are Not Owed Overtime.

45. Plaintiffs now admit that, despite the allegations in her Complaint, to the contrary, neither of the Plaintiffs *ever* worked overtime or more than 40 hours in a workweek.[45] The FLSA provides that no employer shall employ any of its employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and on-half times the regular rate at which he is employed.[46] An employee bringing an action for unpaid overtime must demonstrate by the preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime

---

[42] *See* the Mehmeti Depo at I 30:11-23.

[43] *See* the Mehmeti Depo at I 31:12-17.

[44] *See* the Mehmeti Depo at I 31:18-23.

[45] *See* the Pls. Disclosures at pp. 5-6.

[46] 29 U.S.C. §207(a)(1).

compensation due.[47] Upon the employee establishing a *prima facie* case, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.[48]

46.    Put simply, Plaintiff directly admits that she never worked more than 40 hours a week.[49] Therefore, based upon Plaintiff's discovery responses, there is no overtime and the claim for such recovery fails as a matter of law.

**B.    Mainstage Management, Inc. is not Liable under the FLSA.**

47.    Plaintiffs cannot meet their burden of establishing that Mainstage Management is liable under the FLSA. Plaintiff Layton is not aware of Mainstage Management of how it is involved with the Club, if at all.[50] Mr. Mehmeti, the owner of Mainstage Management, testified that this entity does bookeeping and accounting for different businesses.[51] Furthermore, Mainstage Management does accounting for businesses that Mr. Mehmeti does not own as well.[52] Mainstage Management does not keep track of documents or employment records of the Club.[53] The Sign-in Sheets are maintained in the office of the Club or in storage of the Club, but eventually goes to Mainstage Management to review for bookeeping purposes.[54] Mr. Mehmeti testified that Mainstage Management is not involved in the hiring or firing of the dancers and the only involvement of Mainstage Management in the Club

---

[47]*Johnson v. Heckmann Water Resources (CVR), Inc.*, 758 F. 3d 627 (5th Cir. 2014).

[48]*Id.*

[49]*See* the Pls. Disclosures at pp. 5-6.

[50]*See* the Layton Depo. at 65:14-22 and 66:10-12.

[51]*See* the Mehmeti Depo. I at 13:7-11.

[52]*See* the Mehmeti Depo. I at 14:3-6.

[53]*See* the Mehmeti Depo. I at 15:4-8.

[54]*See* the Mehmeti Depo. I at 15:9-20.

is the bookkeeping and accounting.[55] Mr. Mehmeti testified the records in storage are maintained by the Club, that the Club retrieves its records from storage and sets up how the files are indexed and organized.[56] Mr. Mehmeti testified that Mainstage Management is only accounting for the Club and other businesses, and has no say-so in the rules or policies of the Club.

**C.     The Economic Realities Test Shows Plaintiffs are Independent Contractors.**

48.    Five factors determine whether an individual is an employee or independent contractor: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the workers' opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job and (5) the permanency of the relationship.[57] The facts as set forth in Section V(C) above, show that the factors weigh in favor of Plaintiffs as independent contractors.

**D.     Defendant is Entitled to Recover on their Counterclaim for Breach of Contract as a Matter of Law.**

49.    To prevail on a breach of contract counterclaim via summary judgment, Defendants need only establish as a matter of law: (1) the existence of a valid contract; (2) its performance, tendered performance or excused performance; (3) that Plaintiffs breached the contract; and (4) damages were incurred by Defendants as a result of Plaintiff's breach.[58]

   *1.     The Licensing Agreement is a Valid Contract.*[59]

---

[55]*See* the Mehmeti Depo. I at 30:11-23.

[56]*See* the Mehmeti Depo. I at 31:12-17.

[57]*Nelson v. SUGARS*, No. 19-20567 (5th Cir. 2020).

[58]*Windhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 838 (Tex.App.–Dallas 2014, no pet.); *Hackberry Creek Club, Inc. v. Hackberry Homeowner's Ass'n*, 205 S.W.3d 46, 55 (Tex.App.–Dallas 2006, pet. denied).

[59]To prove an enforceable contract, the Club is required to establish offer, acceptance, a mutual assent, execution and delivery of the Licensing Agreement, with the intent that it be mutual and binding, and finally,

50. The Licensing Agreements of Plaintiffs are valid and enforceable contracts between the Club and Plaintiffs inasmuch as it is clear that at Plaintiffs' request, the Club made an offer in the form of the Licensing Agreements, which Plaintiffs assented to the terms and accepted by signing the Licensing Agreement.[60]

### 2. *The Club Performed its Obligations Until its Performance was Excused.*

51. The Club performed all conditions precedent,[61] covenants and obligations as it was required under the Licensing Agreement, in that Plaintiffs was permitted to perform on the Premises and retain the mandatory service charges per the agreement that she be treated as an independent contractor.[62] The Club permitted Plaintiffs to receive the Entertainment Fees as mandatory service charges under the Licensing Agreement as an independent contractor.[63] Furthermore, Plaintiff was able to experience the tax benefits of being an independent contractor, further taking advantage of the same by taking deductions for business expenses to offset the income she received from performing at the Club.[64]

### 3. *Plaintiff Breached the Licensing Agreement.*

---

consideration (mutuality of obligations) supporting the Licensing Agreement. *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex.App.–San Antonio 1997, writ denied).

[60] *See* the Layton Depo. at 36:20-26:7 and 28:3-6; *see also* Exhibit 4 of the Layton Depo.

[61] Defendants pleaded that all conditions precedent have been met and no specific denials of such conditions precedent have been made. *Compare* the Original Counter-Claim with the Original Answer filed by Plaintiffs. Therefore, the applicable presumption is in effect.

[62] *See* the Layton Depo. at ; *see also* the Licensing Agreement at ¶12.

[63] *See* the Layton Depo. at ; *see also* the Licensing Agreement at ¶12.

[64] *See* the Layton Depo. at 45:25-46:14.

52. Pursuant to the Licensing Agreement, Plaintiff was: (a) to maintain records of Entertainment Fees and tip income;[65] (b) not permitted to bring a collective action proceeding ("Collective Action Waiver");[66] and, (c) required to bring a dispute through arbitration, not the courts ("Arbitration Provision").[67]  Despite this, Plaintiff breached every single one of these provisions.

### a. Plaintiff Failed to Keep a Record of Income from the Club.

53. Under the unambiguous terms of the Licensing Agreement, Plaintiff was to maintain accurate daily records of all income, including tips, earned while performing on the premises, in accordance with all federal, state and local taxation laws.[68]  Such provision ensured not only compliance with federal tax laws generally, but in the event that a Plaintiff chose to convert or change the relationship, it allowed the parties to seamlessly invoke the provisions of the Licensing Agreement with inequity to the Club. Here, however, a clear breach occurred. Plaintiff admits in her request for admission that she did not keep records of the income she received while performing at the Club.[69]

### b. By Seeking to Compel Certification, Plaintiff Breached the Licensing Agreement.

48. Because the Licensing Agreement contains the Collective Action Waiver,[70] Plaintiff could neither lead nor consent to be a part of a collective action, but nonetheless chose to do so. Plaintiff filed a lawsuit seeking to participate in a collective action and a Consent to Sue.[71]  A class

---

[65] See the Licensing Agreements at ¶7(E), attached to the Appendix at Exhibit A-1 and A-2.

[66] See the Licensing Agreements at ¶22, attached to the Appendix at Exhibit A-1 and A-2.

[67] See the Licensing Agreements at ¶22(E), attached to the Appendix at Exhibit A-1 and A.

[68] See the Licensing Agreements at ¶7(E), attached to the Appendix at Exhibit A-1 and A.

[69] See the Layton Depo. at 59:1-3.

[70] See the Licensing Agreements at ¶22, attached to the Appendix at Exhibit A-1 and A.

[71] See the Complaint; see also the Consent to Sue attached to the Appendix as Exhibit C.

or collective action waiver is separate and distinct from an arbitration provision, as the former is a promise to forgo certain procedural mechanisms in court and the latter is a promise to have a dispute heard in some forum other than a court.[72] It is well-settled that the FLSA does not prohibit employees from waiving the right to proceed collectively under §216(b).[73] A §216(b) collective action under the FLSA may not proceed without a plaintiff to lead it.[74] Plaintiff breached the Licensing Agreement by seeking to lead and participate in the collective or class action.

        **c.**      **By filing a Lawsuit, Plaintiff Breached the Licensing Agreement.**

49. Plaintiffs signed and entered into the Licensing Agreements.[75] In short, paragraph 22 of the Licensing Agreements contains an enforceable arbitration provision.[76] The subject Arbitration Provision of the Licensing Agreement states, in pertinent part, as follows:

> The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement as well as any disputes that may have arisen at any time during the relationship between the parties, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association (the "AAA"), Texas branch....
>
> **THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY...**
>
> **LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT, HE/SHE SPECIFICALLY WAIVES THE RIGHT TO PARTICIPATE IN ANY CLASS ACITON OR COLLECTIVE ACTION AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS**

---

[72] *Am. Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2309 (2013); *see also Cohen v. UBS Financial Services, Inc.*, 14-781-cv (2d Cir. Jun. 30, 2015).

[73] *Carter v. Countrywide Credit Indus., Inc.*, 362 F. 3d 294, 301 (5th Cir. 2004).

[74] *In re Family dollar FLSA Litig.*, 637 F. 3d 508, 519 (4th Cir. 2011).

[75] *See* the Licensing Agreements attached to the Appendix as Exhibit A-1 and A-2.

[76] *See* the Licensing Agreement at ¶22, attached to the Appendix at Exhibit A-1 and A-2.

**CRATED BY ANY COURT IN ANY PROCEEDING, SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF LICENSEE SHALL WAIVE HER RIGHTS TO ANY SUCH RECOVERY.**[77]

50. Notwithstanding the clear language of the applicable provisions, Plaintiffs filed a this lawsuit, asserting claims that arise under the Licensing Agreements.[78] Specifically, the lawsuit, encompasses the subject of a dispute with the Club as to compensation and classification during their relationship.[79] The Arbitration Provision is binding and reciprocal, constituting sufficient consideration for a valid contract.[80] The agreement is signed by the parties, and though not required, it does give credence to the mutuality and knowledge of the parties. The existence of a contract with an arbitration clause demonstrates agreement among the parties to arbitrate.[81]

### 4. Damages were Incurred by the Club as a Result of Claimant's Breach.

51. Due to Plaintiff's breaches of the Licensing Agreement, the Club lost the benefit of the bargain. Plaintiffs kept the Entertainment Fees each received during the period in which she performed at the Club under the Licensing Agreement.[82] Defendants had to expend funds defending against a lawsuit and potential certification, as well as an individual who joined into the collective action. Additional damages will be proved up at the at trial, though the damages and evidence here is undisputed and sufficient for purposes of establishing the element of damages as a matter of law.

---

[77] *See* the Licensing Agreement at ¶22, attached to the Appendix at Exhibit A-1 and A-2.

[78] *See generally,* the Complaint.

[79] *See generally,* the Complaint.

[80] *Goins v. Ryan's Family Steakhouses, Inc.,* 181 Fed. Appx. 435, 437 (5th Cir. 2006)

[81] *Norton v. Tucker Entertainment, LLC,* No. 3:14-cv-01490-G, (ECF Doc. 15) *5(N.D. Tex. Oct. 8, 2014).

[82] *See* the Layton Depo. at 35:14-16, 30:23-25.

**5.     Respondent is Entitled to Recover Attorney's Fees and Costs for Breach of the Licensing Agreement.**

52.     Pursuant to §38.001, et seq. of the *Texas Civil Practices & Remedies Code*, and the Licensing Agreement, Defendants are entitled to recover all such reasonable attorney's fees from Plaintiff incurred by Defendants to protect its rights under the Licensing Agreement.[83]  Defendants intend to reserve this matter for the court to be decided along with the issue of damages, as is permitted under Rule 56 of the *Federal Rules of Civil Procedure.*

### VII.  PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that the Defendants' Motion be, in all things GRANTED, and for such other and further relief at law or in equity to which the Defendants may show themselves justly entitled.

---

[83] Tex. Civ. Prac. & Rem. Code §38.001, *et seq.*