IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BROOKE LAYTON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-1636-N |
| | § | |
| MAINSTAGE MANAGEMENT, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

This Order addresses Mainstage Management, Inc., Nick's Mainstage, Inc. – Dallas PT's d/b/a PT Men's Club, and Nick Mehmeti's (collectively "Mainstage") threshold motion for summary judgment [35]. Because Plaintiffs waived their right to collective action, the Court grants the motion in part.

### I. Origins of the FLSA Dispute

Plaintiffs Brooke Layton and Ashlynn Shipley, exotic dancers at a Dallas-area adult entertainment establishment, instituted this putative collective action under the Fair Labor Standards Act ("FSLA"). Both Plaintiffs entered into License and Lease Agreements ("Licensing Agreement") with Mainstage's club. Layton Licensing Agreement App. 8 [37]; Shipley Licensing Agreement App. 21. Between them, the Plaintiffs worked at the club from 2018 until 2020, during which time they allege Mainstage paid them below the federal minimum wage. Pls.' Am. Compl. ¶¶ 19, 23 [21]. Plaintiffs claim that Mainstage

ORDER – PAGE 1

misclassified them as independent contractors and then grossly underpaid them. *Id*. at ¶¶ 21, 27, 51–57.

Plaintiffs initiated this case as a collective action purporting to represent a class of similarly situated Mainstage employees. *Id*. at ¶¶ 7, 75. Mainstage then filed a motion to dismiss, partially based on a contractual defense. Defs.' Mot. to Dismiss 4 [22]. The Court could not consider the Licensing Agreement Mainstage sought to enforce but granted leave for Mainstage to file an additional threshold motion for summary judgment. Order on Mot. to Dismiss 1 [29]. Mainstage now moves for summary judgment, arguing that (1) failure to comply with a notice provision in the Licensing Agreement bars Plaintiffs' claims, and (2) Plaintiffs waived their right to bring a collective action. Defs.' Br. in Supp. of Mot. for Summ. J. 1 [36].

## II.  SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of

ORDER – PAGE 2

material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### III. THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT

The Court concludes that the notice provision in the Licensing Agreement does not bar this action because it is a covenant — not a condition precedent. However, because Plaintiffs signed a valid collective action waiver, the Court grants Mainstage's motion for summary judgment regarding collective action.

#### A. *The Notice Provision is Not a Condition Precedent*

The Licensing Agreement does not require notice before filing a lawsuit. The notice provision provides the following:

> If at any time Licensee believes that, irrespective of the terms of this Agreement, Licensee is being treated as an employee by the Club or that Licensee's relationship with the Club is truly that of an employee, Licensee shall immediately, but in no event later than three business days thereafter, provide notice to the Club in writing of Licensee's demand to be fully treated as an employee consistent with the terms of this paragraph and applicable law, and shall also within the same time period begin reporting all of Licensee's tip income to the Club on a daily basis; such tip reporting being required of all tipped employees of the Club under the terms of the Internal Revenue Code.

App. 14.

To create a condition precedent, "a term such as 'if,' 'provided that,' 'on condition that,' or some similar phrase of conditional language must normally be included." *Criswell v. Eur. Crossroads Shopping Ctr, Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). However, "[c]ourts will not construe a contract provision as a condition precedent unless they are compelled to do so by language that may be construed in no other way." *Chambers v. Hunt*

ORDER – PAGE 3

*Petroleum Corp.*, 320 S.W.3d 578, 584 (Tex. App. – Tyler 2010, no pet.) (citing *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

Although the provision here uses the word "if," a plain reading shows that it does not create a condition precedent to litigation. Instead, the language makes the notice requirement conditional on the Licensee's belief that he or she is an employee. The provision makes no reference to litigation, let alone a requirement that a Licensee fulfill the obligation before filing a lawsuit. It is therefore a covenant rather than a condition precedent. Further, the language of the provision assumes the Licensee's ongoing employment; it does not apply to Plaintiffs, who already stopped working for Mainstage. Pls.' Am. Compl. ¶ 23. Thus, Plaintiffs were not required to provide notice before filing this suit, and the Court denies summary judgment on this basis.

### B. Plaintiffs Waived Their Right to Collective Action

The Licensing Agreement's collective action waiver bars Plaintiffs' claims. The Fifth Circuit has long held that FLSA does not prohibit employees from waiving their right to collective action. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (rejecting argument that the inability to proceed collectedly deprives employees of substantive rights under FLSA); see also *Mazurkiewicz v. Clayton Homes*, *Inc.*, 971 F. Supp. 2d 682, 692 (S.D. Tex. 2013) (applying *Carter* to an independent collective action waiver). The Licensing Agreement in this case contains such a waiver:

> LICENSEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT, HE/SHE SPECIFICALLY WAIVES THE RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION AND IF AT ANY TIME LICENSEE IS DEEMED A MEMBER OF ANY CLASS CREATED BY ANY COURT IN ANY PROCEEDING,

ORDER – PAGE 4

>   SHE WILL "OPT OUT" OF SUCH CLASS AT THE FIRST OPPORTUNITY, AND SHOULD ANY THIRD PARTY PURSUE ANY CLAIMS ON HER BEHALF LICENSEE SHALL WAIVE HER RIGHTS TO ANY SUCH RECOVERY.

App. 17. Both Plaintiffs signed the overall agreement and initialed the page with this language. App. 17; App. 30. Therefore, they waived their rights to pursue their FLSA claims as a collective action.

Further, the collective action wavier is independently enforceable. Plaintiffs rely on *Vine v. PLS Financial Services, Inc*. to argue that Mainstage can enforce the collective action waiver only by invoking arbitration. Pls.' Resp. Br. 3 [48]; 807 F. App'x 320 (5th Cir. 2020). But the agreement in *Vine* waived class action rights only as a consequence of agreeing to arbitration. *See Vine,* 807 F. App'x at 328 ("The Borrowers gave up their right to participate in a class action *by virtue of* their agreement to resolve disputes exclusively through individual arbitration.") (emphasis included). The class action waiver was one of several subsections that described the impact of agreeing to arbitration. *Id*.

In contrast, the provision in the Licensing Agreement here discusses arbitration and collective action separately. Indeed, the header describes three distinct topics: "22. ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS." App. 16. The collective action waiver is also a separate section rather than a subparagraph to the arbitration the provision. *Id*. at 16–17. Further, unlike in *Vine*, the introductory clause here describes the waiver as a consequence of signing the Licensing Agreement — not as a consequence of agreeing to arbitration. *Compare id*. at 17 *with Vine*, 807 F. App'x at 328 ("You acknowledge and agree that by entering into this

ORDER – PAGE 5

Arbitration Provision . . .").  The Court thus finds that the class action waiver is enforceable independent of the arbitration provision.  Because Plaintiffs brought collective action claims, despite a valid waiver, the Court grants Mainstage's motion for summary judgment regarding collective action.

## CONCLUSION

The Court concludes that the notice provision in the Licensing Agreement does not bar Plaintiffs' claims because it is merely a covenant.  However, because Mainstage has established a valid collective action waiver, the Court grants the motion for summary judgment regarding Plaintiffs' collective action claims.  Plaintiffs' individual claims may proceed.

Signed October 18, 2022.

David C. Godbey
Chief United States District Judge

ORDER – PAGE 6