UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BROOKE LAYTON and ASHLYNN SHIPLEY, individually and on behalf of all other similarly situated, | § § § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO. 3:21-cv-01636-N |
| v. | § | |
| | § | COLLECTIVE ACTION |
| MAINSTAGE MANAGEMENT, INC., | § | |
| NICK'S MAINSTAGE, INC. – DALLAS | § | JURY DEMANDED |
| PT'S d/b/a PT'S MEN'S CLUB and | § | |
| NICK MEHMETI, | § | |
| *Defendants.* | § | |

### PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYEE STATUS AND MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS AND AFFIRMATIVE DEFENSES [DKT. 82]

Plaintiffs Brooke Layton and Ashlynn Shipley (collectively, "Plaintiffs") file this Reply to Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Employee Status and Motion for Summary Judgment on Defendants' Counterclaims and Affirmative Defenses [Dkt. 82, referred to herein as the "Motion"]. In support thereof, Plaintiffs respectfully show this Court as follows:

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................**2**

TABLE OF AUTHORITIES...........................................................................................**3**

SUMMARY....................................................................................................................**6**

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS.................................**7**

   A.   OBJECTIONS TO EVIDENCE SHOULD BE OVERRULED ...........................................7

   B.   DEFENDANTS' OTHER OBJECTIONS TO PLAINTIFFS' MOTION ............................10

       *Defendants Misstate the Law on Control*...................................................*10*

       *Plaintiffs' Affirmative Defenses* ..............................................................*10*

       *Plaintiffs' Incorporation of Arguments*..................................................*11*

ARGUMENTS & AUTHORITIES ...............................................................................**11**

   A.   THERE IS NO BAR TO A FINDING OF EMPLOYEE STATUS AS DEFENDANTS' CLAIM............11

   B.   THE TEST FOR EMPLOYEE STATUS HAS BENN WELL ESTABLISHED AND IS A QUESTION OF LAW.................................................................................................13

   C.   THERE ARE NO GENUINE DISPUTES OF MATERIAL FACTS IMPEDING THE COURT'S LEGAL DETERMINATION OF EMPLOYEE STATUS.................................................16

       *Control* .....................................................................................................*16*

       *Relative Investments*................................................................................*18*

       *Opportunity for Profit and Loss* ..............................................................*19*

       *The Remaining Factors Weigh in Favor of Employee Status* ...........................*21*

   D.   DEFENDANTS' HAVE NO RIGHT OR ENTITLEMENT TO ATTORNEYS' FEES IN THIS FLSA ACTION .................................................................................................24

PRAYER FOR RELIEF................................................................................................**25**

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)...................................................12

*Armstrong v. Texas State Bd. of Barber Examiners*,
30 F.3d 643, 644 (5th Cir. 1994)...................................................................................................22

*Barrentine v. Arkansas-Best Freight System*,
450 U.S. 728, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981) .......................................................23

*Beck v. Access eForms, LP*,
No. 4:16-CV-00985, 2018 WL 295414, at *4 (E.D. Tex. Jan. 4, 2018). ......................................22

*Brady v. Blue Cross and Blue Shield of Tex., Inc.*,
767 F.Supp. 131, 135 (N.D. Tex. 1991).........................................................................................6

*Brock v. Mr. W Fireworks, Inc.*,
814 F.2d 1042, 1045 (5th Cir. 1987)..............................................................................................12

*Cordero v. Voltaire, LLC*,
2013 WL 6415667, at *3 (W.D. Tex. Dec. 6, 2013)......................................................................22

*Dixon v. Loc. Express, Inc.,*
No. 4:16-CV-2081, 2017 WL 2778245, at *2 (S.D. Tex. June 26, 2017) ....................................22

*Fowler v. S. Bell Tel. & Tel. Co.,*
343 F.2d 150, 154 (5th Cir. 1965)...................................................................................................6

*Frankel v. Bally, Inc.,*
987 F.2d 86 (2nd Cir. 1993)...........................................................................................................11

*Graves v. Woman's Professional Rodeo Assoc., Inc.*,
907 F.2d 71, 72-74 (8th Cir. 1990) ................................................................................................11

*Harrell v. Diamond A Entm't, Inc.*,
992 F. Supp. 1343, 1353 (M.D. Fla. 1997) ...................................................................................16

*Hart v. Rick's Cabaret Int'l, Inc.*,
967 F. Supp. 2d 901, 921 (S.D. N.Y. 2013)..................................................................................20

*Hernandez v. ARC Trading Co.*,
No. 3:17-CV-2057-BN, 2018 WL 2017680, at *1 (N.D. Tex. May 1, 2018)..............................22

*Johnson v. Houston KP, LLC d/b/a Polekatz*,
No. 4:20-cv-663, 2022 WL 605802 at *6 (S.D.Tex. March 1, 2022)..........................................14

*Johnson v. North Texas Dancers, L.L.C.*,
Civil Action No. 7:20-cv-00116, 2021 WL 2077649 at *5 (N.D. Tex., May 24, 2021) .......*passim*

*Jones v. Dallas County, Texas*,
No. 3-01-cv-0167, 2002 WL 83755 at *1, fn.2 (N.D. Tex. Jan 14, 2002)....................................8

*Mach v. Will Cnty. Sheriff*,
*580 F.3d 495, 501 (7th Cir. 2009)* ............................................................................................23

*Martin v. Priba Corp.*,
No. 3:91-cv-2786, 1992 WL 486911, at *3 (N.D. Tex. Nov. 6, 1993)........................................17

*Natalie Heath, et al v. RPM Dining, LLC d/b/a the Yellow Rose*,
No. A-20-cv-00890, 2022 WL 827654 at *10 (W.D. Tex. March 18, 2022),
*adopted*, 2022 WL 1793533 (W.D. Tex. May 3, 2022).................................................................14

*Neff v. Civil Air Patrol*,
916 F. Supp. 710, 711-715 (S.D. Ohio 1996) .............................................................................11

*Nelson v. Tex. Sugars, Inc.*,
838 Fed. Appx. 39 (5th Cir. 2020) ................................................................................5, 12, 13

*O'Connor v. Davis*,
126 F.3d 112, 115 (2nd Cir. 1997) ..............................................................................................10

*Parrish v. Premier Directional Drilling, L.P.*,
917 F.3d 369, 377 (5th Cir., 2019).......................................................................................*passim*

*Patel v. Wargo*,
803 F.2d 632, 635 (11th Cir. 1986) .............................................................................................11

*Reich v. Circle C. Investmts.*,
998 F.2d 324 (5th Cir. 1993).......................................................................................13, 14, 18

*Reich v. Priba Corp.*,
890 F. Supp. 586, 592 (N.D. Tex. 1995)......................................................................................17

*Schofield v. Gold Club Tampa, Inc.*,
Case No. 8:19-cv-3097, 2021 WL 533540 at *5 (M.D. Fla., Feb. 12, 2021) .......................*passim*

*Silverthorne Seismic, LLC v. Sterling Seismic Services, Ltd.*,
Civil Action No. H-20-2543, 2021 WL 4710813 at *2 (S.D. Tex. Oct. 7, 2021)........................ 10

*Smith v. Berks Community Television*,
657 F.Supp. 794-96 (E.D. Penn. 1987) ...................................................................... 11

*Tadros v. Coleman*,
717 F.Supp. 996, 1002-1006 (S.D.N.Y. 1989)............................................................. 11

*Tesco Corp. v. Weatherford Int'l*,
904 F.Supp.2d 622, 636 (S.D. Tex. 2012) ................................................................... 8

*Villareal v. Woodham*,
113 F. 3d 202, 205 (11th Cir. 1997)........................................................................... 11

*Walling v. Nashville Chattanooga & St. Louis Ry.*,
330 U.S. 148, 152, 67 S.Ct. 639, 641, 91 L.Ed. 809 (1947) ....................................... 11

## OTHER AUTHORITIES

10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2722 at 51-52 (1983) ... 6

10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738 (2d ed. 1983)....... 8

## RULES

Fifth Circuit Rule 47.5.4 ............................................................................................. 5

## SUMMARY

1.     Defendants Mainstage Management, Inc. (Mainstage), Nick's Mainstage, Inc.-Dallas PT's d/b/a PT's Men's Club (the Club) and Nick Mehmeti (Mehmeti) (collectively, "Defendants") confuse legal standards and misapply case law to conclude Plaintiffs are independent contractors in these cross-motions for summary judgment. At the outset, Defendants incorrectly claim a threshold inquiry to determining employee status under the FLSA is whether there is an expectation of compensation for work. *See* Defendants' Response at ¶¶36-38 [Dkt. 89]. Citing mostly Title VII and prison cases, Defendants attempt to change the long-applied standard in the Fifth Circuit for determining employee status: whether the alleged employees, as a matter of economic reality, are 'economically dependent' on the business to which they supply their labor and services". *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369,379 (5th Cir. 2019)(internal citations omitted). In order to determine employee economic dependence, the Fifth Circuit courts use the *Silk* factors to guide the analysis, otherwise referred to as the economic realities test. *Id.* Defendants' claimed 'core-consideration' is nowhere to be found in the FLSA employee determination, although Plaintiffs certainly expected to be paid for their work and not have their tip money taken by Defendants.

2.     When Defendants do attempt to apply the correct test (the economic realities test), Defendants fatally rely upon on an unpublished, post-judgment appeal of the denial of a motion for judgment as a matter of law. *See e.g.* Defendants' Response at ¶¶39-51 [Dkt. 89]. The *Nelson v. Texas Sugars* case is not binding precedent in this matter as it was unpublished. *See* Fifth Circuit Rule 47.5.4 (unpublished opinions issued on or after January 1, 1996 are not precedent). *Nelson* is also procedurally inapplicable as it was not a summary judgment motion and was therefore not appealed or reviewed under the federal summary judgment standard. *Nelson v. Tex. Sugars, Inc.*,

838 Fed. Appx. 39 (5th Cir. 2020).

3.      Plaintiffs cite to over *twenty-five summary judgment cases* in which adult entertainers, in almost exactly the same circumstances as the facts describe herein, were determined as a matter of law to be employees of adult entertainment clubs pursuant to the FLSA, including those decided post-*Nelson*. *See* Plaintiffs' Brief in Support of Response in Opposition to Defendants' Motion for Summary Judgment at ¶10 collecting cases [Dkt. 80-2, now Dkt. 93], incorporated by reference in Plaintiffs' Brief in Support of the Motion [Dkt. 82]. The overwhelming weight of authority is that adult entertainers are employees under the FLSA. *Id.*

4.      As has been held many times before, Plaintiffs herein are employees under the proper FLSA analysis. Plaintiffs' partial motion for summary judgment on employee status should be granted and Defendants motion on same denied.

5.      Likewise, Defendants' counterclaims as to Layton are improper in the context of FLSA claims. The Fifth Circuit has long held such claims are improper set-offs as to minimum wage claims, and thus should be dismissed. Alternatively, the Court should hold Defendants' cannot establish at least one element of their claims, so summary judgment should be granted. Finally, Defendants' claim for attorneys fees is improper in the context of a FLSA case.

6.      Plaintiffs' Motion should be in all things granted.

### **PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS**

**A.      OBJECTIONS TO EVIDENCE SHOULD BE OVERRULED**

7.      Defendants' objections to Plaintiffs' Summary Judgement Evidence should be overruled. Interrogatory responses may constitute competent summary judgment evidence if they satisfy the other requirements of Rule 56. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2722 at 51-52 (1983). Unverified answers to interrogatories are not

competent summary judgment evidence. *See Fowler v. S. Bell Tel. & Tel. Co.,* 343 F.2d 150, 154 (5th Cir. 1965); *Brady v. Blue Cross and Blue Shield of Tex., Inc.*, 767 F.Supp. 131, 135 (N.D. Tex. 1991).

8.     Defendants Second Amended Interrogatories were not verified, so such responses were ineffectual to amend or supersede their prior verified interrogatory responses. *See* Defendants' Exhibit 1, APPX. 022 [Dkt. 90-1]; *see also Id*. Plaintiffs correctly relied upon Defendant Nick's Mainstage, Inc.'s last verified responses to interrogatories, interrogatory answers numbers 8 and 9. *See* PLTFS APPX 16. Defendants' objection should be overruled. Even if the objection was not overruled, Plaintiffs supported the relative investment factor by other competent summary judgment evidence other than Defendants' interrogatory response. *See* Plaintiffs' Brief in Support of Response in Opposition to Defendants' Motion for Summary Judgment at ¶26 [Dkt. 80-2, now Dkt. 93], incorporated by reference in Plaintiffs' Brief in Support of the Motion [Dkt. 82].

9.     Layton and Shipley's Interrogatory Response No. 10 is the only evidence referenced or utilized in support of Plaintiffs' Motion. *See* Plaintiffs' Brief in Support of Response in Opposition to Defendants' Motion for Summary Judgment at ¶25 [Dkt. 80-2, now Dkt. 93], incorporated by reference in Plaintiffs' Brief in Support of the Motion [Dkt. 82]. This common-sense interrogatory response only states the obvious – dancers have to rely on the Club's facilities to provide their entertainment services to the Club's patrons. Plaintiffs support their position on their de minimus relative investment in their entertainment work via other competent summary judgment evidence – including Layton's deposition testimony. *Id.* Plaintiffs likewise outlined the relative investments by dancers versus the Club in their Amended Complaint.  See Amended Complaint at ¶¶38-44. Should the Court need to rely on this one interrogatory response to find the

relative investment factor weighs in favor of employee status, Defendants' objections should be overruled. The case law cited by Defendants does not hold that any discovery with any objections cannot be relied upon, but rather that unverified answers are not competent evidence. *See Tesco Corp. v. Weatherford Int'l*, 904 F.Supp.2d 622, 636 (S.D. Tex. 2012)(holding unverified interrogatories could not be used as competent summary judgment evidence). Plaintiffs' objections

10.     Defendants' sham affidavit objection is not specific to the interrogatory (Number 10) answer in evidence, and as such is not sufficient specific. "Such vague and general objections do not merit consideration." *Jones v. Dallas County, Texas*, No. 3-01-cv-0167, 2002 WL 83755 at *1, fn.2 (N.D. Tex. Jan 14, 2002)(*citing* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738 (2d ed. 1983)). Assuming the sham "affidavit" theory applies to interrogatory responses, Defendants' objection merely points out one alleged inconsistency and it is not to the interrogatory utilized by Plaintiffs in support of their Motion. *See* Defendants' Response Brief at pg. 9 [Dkt.89]. Defendants' sham affidavit objection to Layton's discovery responses should be overruled.

11.     Defendants' request for discovery sanction disguised as an evidentiary objection should be overruled. Defendants previously filed a motion to sanction Ms. Shipley for failing to show up at her scheduled deposition. *See* Dkt. 52. Plaintiffs filed their response, explaining the good cause failure to appear and offering to present Ms. Shipley for deposition at a mutually agreeable time and that Plaintiffs would pay for the cost of the court reporter for the re-scheduling. *See* Dkt. 62 at ¶8. Defendants never conferred or requested Ms. Shipley's deposition thereafter, despite the Court granting an extension of deadlines to complete the deposition. *See* Dkt. 78. The failure of Defendants to depose Plaintiff Shipley is their own. There is no basis to exclude Shipley's discovery responses on this basis.

**B**.    **DEFENDANTS' OTHER OBJECTIONS TO PLAINTIFFS' MOTION**

*Defendants Misstate the Law on Control*

12.    Defendants point out in Plaintiffs' Amended Complaint, Plaintiffs' assert Defendants controlled Plaintiffs through their dance outfits by (1) reserving the right to decide what a particular entertainer was allowed to wear on the premises; and (2) by enforcing dress codes on entertainers to the same extent required by the City or State as to adult entertainers.  *See* Amended Complaint at ¶34 [Dkt. 21]. Defendants' assert Plaintiffs are "bound by these pleadings" and that "complying with the law cannot be a basis upon which control is based." *See* Response at ¶9 [Dkt. 89]. Perhaps Defendants' argument is meant to claim Plaintiffs can never state any facts in their deposition, discovery responses or at trial beyond that alleged in their pleadings. Such a rule cannot be the case as it would moot all need for discovery in federal cases because the facts are and can only be what is alleged in the complaint.

13.    As is particularly relevant in this case, Defendants' control over Plaintiffs' work can be shown via enforcement of codes or law related to adult entertainers. Courts have ruled that enforcement of law or codes on employees can be indicia of control.

*Plaintiffs' Affirmative Defenses*

14.    Defendants' next objection is that Plaintiff Layton never filed a response to Defendant's counterclaim [Dkt. 8], so therefore cannot assert affirmative defenses on summary judgment to defeat same. *See* Response at ¶10 [Dkt. 89]. First, Plaintiff Layton did not solely assert affirmative defense arguments as to Defendants' improper counterclaims. But, irrespective, Plaintiff Layton did file a response and asserted affirmative defenses to Defendants' counterclaim. *See* Response to Counterclaim [Dkt. 11]. Plaintiff Layton raised six affirmative defenses, including illegality in her response. *See* Response at ¶30 [Dkt.11]. Plaintiff Layton has not waived her right

to assert affirmative defenses in this case given her pleading on file.

***Plaintiffs' Incorporation of Arguments***

15.     Defendants' final objection is to Plaintiffs' incorporation of arguments from documents previously filed with the Court.[1] It is common practice to incorporate arguments when there are cross-motions for summary judgment on the same issues. There is no evidence such incorporation of previously briefed arguments would exceed the page limits and the Court has granted Plaintiffs' motion for leave, so the response has been re-filed as a lead document. *See* Order [Dkt. 91]; Plaintiffs' re-filed Response, Brief and Appendix [Dkt. 92-95]. Defendants have not been prejudiced from the incorporation of Plaintiffs previously filed and served arguments, and have seemingly responded to such herein.

16.     Plaintiffs were entitled under the scheduling order to file their motion for summary judgment on or before March 17, 2023, and Plaintiffs choice to do so is not a 'back-door' to anything but her entitlement to present the Court with a dispositive motion. Defendants have done so twice now. Considering courts favor determining issues on the merits, it would be inappropriate to strike a motion for incorporating arguments the Court was going to consider anyway now that the leave was granted. *See e.g. Silverthorne Seismic, LLC v. Sterling Seismic Services, Ltd*., Civil Action No. H-20-2543, 2021 WL 4710813 at *2 (S.D. Tex. Oct. 7, 2021). Plaintiffs motion and incorporated arguments should be considered in full when the Court is determining matters of law.

## ARGUMENTS & AUTHORITIES

**A.     THERE IS NO BAR TO A FINDING OF EMPLOYEE STATUS AS DEFENDANTS' CLAIM**

17.     Defendants first argue that lack of remuneration bars a finding of employee status under the FLSA. *See* Response at ¶¶36-38 [Dkt. 89]. Defendants' argument is incorrect.

---

[1] Although Plaintiffs acknowledge their Response was an exhibit to their Motion for Leave, it was nonetheless 'on file' with the Court and accessible to Defendants in drafting their response herein.

18.    First, Defendants cite to a string of Title VII cases in other jurisdictions, finding volunteers are not employees under a Title VII analysis. *See O'Connor v. Davis*, 126 F.3d 112, 115 (2nd Cir. 1997)(holding volunteer intern was not an employee under common law agency test for Title VII); *Neff v. Civil Air Patrol*, 916 F. Supp. 710, 711-715 (S.D. Ohio 1996)(holding a volunteer to civil air patrol did not meet employee definition under Title VII); *Tadros v. Coleman*, 717 F.Supp. 996, 1002-1006 (S.D.N.Y. 1989)(holding a visiting lecturer could not meet definition of employee under Title VII)(*overruled by Frankel v. Bally, Inc.,* 987 F.2d 86 (2nd Cir. 1993)); *Graves v. Woman's Professional Rodeo Assoc., Inc.*, 907 F.2d 71, 72-74 (8th Cir. 1990)(holding male rodeo barrel racer could not meet employee definition under Title VII); *Smith v. Berks Community Television*, 657 F.Supp. 794-96 (E.D. Penn. 1987)(holding unpaid volunteers are not employees under Title VII).[2] The employee status test under Title VII is not of issue in this matter, and application of the test for such is improper.

19.    Defendants then wildly claim the same bar has been applied in FLSA actions.[3] In *Patel v. Wargo*, the Eleventh Circuit concluded that plaintiff was not an employee of the landlord that leased the premises to his employer where he worked. *See Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986). As one part of the analyses (the other part being the application of the economic realities test), the Court found plaintiff did not expect compensation from the landlord for any work performed. *Id.*, *citing Walling v. Nashville Chattanooga & St. Louis Ry.*, 330 U.S. 148, 152, 67 S.Ct. 639, 641, 91 L.Ed. 809 (1947). The court never held lack of remuneration alone was a bar to employee status under the FLSA. In *Walling*, also relied upon by Defendants, the Supreme Court

---

[2] Defendants inexplicably also rely on *Doty v. Ellas* for the proposition regarding a bar to employee status for lack of remuneration. *See* Response at fn. 49. However, in *Doty*, the 10th circuit applied the economic realities test to determine restaurant waitresses were employees. *See Doty v. Ellas*, 733 F.2d 720, 723 (10th Cir. 1984).

[3] Again – the case law cited is not from the Fifth Circuit, so even if applicable (which Plaintiffs do not claim), it would not be binding on this Court.

found apprentices and trainees could not meet employee status under the FLSA. *Id.* Finally, Defendants rely on *Villareal v. Woodham*, a FLSA case solely limited to the prison/prisoner context. *See Villareal v. Woodham*, 113 F. 3d 202, 205 (11th Cir. 1997).

20.      Even if the cited cases were the standard, Plaintiffs certainly expected to be paid for their work as adult entertainers. The contract labels instituted by Defendants do not control that expectation. Furthermore, whether or not Plaintiffs subjectively believed they were independent contractors is not controlling to the analysis. Plaintiffs expected remuneration for their work and Defendants were their employer.

### B.      THE TEST FOR EMPLOYEE STATUS HAS BENN WELL ESTABLISHED AND IS A QUESTION OF LAW

21.      There is no question that whether a worker is an employee for FLSA purposes is a question of law. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 377 (5th Cir., 2019)(*citing Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1045 (5th Cir. 1987)). "Importantly, 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact'. *Parrish*, 917 F.3d at 378, (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original)).  The substantive law identifies which facts are material and only facts that would affect the outcome of the suit under the law will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Although a material fact may present a genuine dispute if a reasonable jury could return a verdict for the nonmoving party, if the evidence is not significantly probative, summary judgment is appropriate. *Anderson*, 477 U.S. at 248-50, 106 S.Ct. 2505 (internal citations omitted).

22.      Defendants' response urges one main argument relying almost entirely on the inapplicable, non-binding *Nelson v. Texas Sugars* case and applying that case alone to Defendants'

alleged genuine and material facts. *See* Response at ¶39-51; *Nelson v. Tex. Sugars, Inc.*, 838 Fed. Appx. 39 (5th Cir. 2020). First, the binding, published Fifth Circuit precedent is *Reich v. Circle C. Investments* as to the determination of FLSA employee status as to exotic dancers. *See Reich v. Circle C. Investmts.*, 998 F.2d 324 (5th Cir. 1993). Furthermore, Defendants' attempt to draw competing inferences (via *Nelson*) from undisputed facts has flatly been rejected across the nation, including the Fifth Circuit, in summary judgment determinations on the issue of FLSA employee status for adult entertainers. *See* Plaintiffs' Brief in Support of Response in Opposition to Defendants' Motion for Summary Judgment at ¶10 collecting cases [Dkt. 80-2, now Dkt. 93], incorporated by reference in Plaintiffs' Brief in Support of the Motion [Dkt. 82]. When the *Reich* standards are applied to the undisputed, genuine and material facts, Plaintiffs are undisputedly employees. *See e.g. Johnson v. North Texas Dancers, L.L.C.*, Civil Action No. 7:20-cv-00116, 2021 WL 2077649 at *5 (N.D. Tex., May 24, 2021)(*citing Reich*, 998 F.2d at 327)("The Fifth Circuit has squarely found that topless dancers qualify as employees under the FLSA.")

23.     Second, the *Nelson* court was not viewing the facts of the case through the lens of a summary judgment, but rather post-judgment Rule 50 analysis. *See Nelson*, 838 Fed. Appx. At 41-42. As the Fifth Circuit explained, there are three types of finding in the employee status determination under the FLSA: (1) historical findings of fact underlying the *Silk* factors; (2) findings at to the *Silk* factors, which involve making inferences from facts (which is not used in determining entitlement to summary judgment); and (3) the ultimate finding as to employee status, a legal conclusion. *See Parrish*, 917 F.3d at 378. The inferences inferred from the facts in the Nelson case where viewed with a lens to support the juries verdict, as opposed to looking at the undisputed historical facts to make a ultimate legal conclusion as the Court is asked to do herein. *See Nelson*, 838 Fed. Appx. At 41-42. *Parrish* was also a FLSA case wherein employee status was

determined on cross-motions for summary judgment, despite that a jury had been demanded by the parties. The Fifth Circuit found that the material facts were undisputed and that, therefore, summary judgment was appropriate.

24.     In the *Johnson v. North Texas Dancers* case, decided on summary judgment after the *Nelson* case, the district court rejected several of the *Nelson* court's articulated "inferences" in favor of a prior, precedential, published case, *Reich*. *Johnson v. North Texas Dancers, L.L.C.*, No. 7:20-cv-00116, 2021 WL 2077649 at \*5 (N.D. Tex., May 24, 2021)(*citing Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993)). Specifically, the court concluded the extent of relative investments in the Club outweighed the dancer's small investment in costume, considering all of the Club's investments in the operation of the Club, that the dancer's opportunity for profit and loss was largely determined by the Club, in that the Club controlled the 'market' for dancers within the Club, and that little skill was needed to be an exotic dancer, all of which favored employee status, unlike the determinations in *Nelson*. *Id.* at \*4-5.

25.     Likewise, the district court in the *Johnson v. Polekatz* case, also decided on summary judgment after the Nelson case, found exotic dancers were employees of the Club as a matter of law. *Johnson v. Houston KP, LLC d/b/a Polekatz*, No. 4:20-cv-663, 2022 WL 605802 at \*6 (S.D.Tex. March 1, 2022). The court noted the Fifth Circuit "has long held, even in situations of contradictory facts, that whether a worker is an employee for the purposes of the FLSA is a question of law to be decided by the court." Id. at \*2. The court in *Heath v. Yellow Rose* also decided employee status in favor of exotic dancers on summary judgment. *See Natalie Heath, et al v. RPM Dining, LLC d/b/a the Yellow Rose*, No. A-20-cv-00890, 2022 WL 827654 at \*10 (W.D. Tex. March 18, 2022), *adopted*, 2022 WL 1793533 (W.D. Tex. May 3, 2022).

26.     In these cases, the Court looked at the facts which were much the same as this case,

and determined adult entertainers were employees. This Court should hold the same.

27.     As Plaintiffs' outline in more detail below, the facts alleged by Defendants are not material or genuine such as to preclude summary judgment for Plaintiffs. Plaintiffs' motion for partial summary judgment on employee status should be granted.

**C.     THERE ARE NO GENUINE DISPUTES OF MATERIAL FACTS IMPEDING THE COURT'S LEGAL DETERMINATION OF EMPLOYEE STATUS**

***Control***

28.     The important facts alleged by the parties on this factor are largely undisputed and were part of Defendants' contracts, upon which they rely for counterclaims against Plaintiffs. Defendants are equitably estopped from contradicting the terms of their own agreements, which they seek to enforce herein. Notably, Defendants comment very little on the terms of their agreement, other than to suggest Plaintiffs somehow misrepresented the written words and didn't take the entirety of the agreement into account. *See* Defendants' Response at ¶41 [Dkt. 89]. The Court can review the language of the agreements without the need for any party to interpret. *See* Defendants' Appendix [Dkt. 37] (DEFS APPX), Exhibits A-1 and A-2. When the entirety of the agreement is taken into consideration – the contract only stands for one, illegitimate reason: to circumvent the Fair Labor Standards Act and provide a retaliatory mechanism for any adult entertainer that attempts to assert her federal rights. *See Id.* at Sec. 13(d). That is certainly indicia of control, even when viewing the document as a "whole."

29.     The following genuine and material facts are undisputed and listed in the contracts: (1) In order to work at the Club, Plaintiffs had to sign the contracts; (2) Plaintiffs paid a house fee to the club each shift they worked, in accordance with the specifications to the contracts; (3) Defendants retained the profits of the house fees; (4) Plaintiffs were required to check in with the house mom and DJ, and to check out with both the DJ and management; (5) only Defendants had

the authority to hire and fire club employees and entertainers, not entertainers; (6) Defendants controlled who can enter and leave the club (customers or entertainers); (7) Defendants set the cover charge and dress code, and enforced such upon customers to the club; (8) entertainers were on a stage performance rotation; (9) Defendants set the minimum prices entertainers could charge for performing lap dances, and other charges; (10) the entertainers had a minimum set schedule, which was to be scheduled at least a week in advance, defined by the contract and the "Specifications" thereto; (11) the entertainers do pick their costumes, but they must wear shoes and must comply with the law applicable to the club and sexually oriented businesses; (12) entertainers can perform onstage as they saw fit, within the boundaries of the Club's atmosphere and patronage; (13) Plaintiffs were subject to fines for loss rent, and leave early fines. *See* Plaintiffs' Response at ¶18-21 [Dkt. 80-2], incorporated by reference to the Motion [Dkt. 82]; Defendants' Response at ¶41-42.

30.     A review of the undisputed facts, under *Reich*, can only lead to the conclusion Plaintiffs are Defendants' employees. Plaintiffs had weekly schedules, fees and fines assessed, at least minimum charges for dances, minimum standards for their costumes, log-in and log-out requirements, and alleged consequences should they dare choose to enforce their Federal FLSA rights. *See* Plaintiffs' Response at ¶18-21 [Dkt. 80-2], incorporated by reference to the Motion [Dkt. 82].

31.     In a strikingly similar summary judgment case, the court explained why the facts that "the entertainer decided her own schedule, decided whether to dance on stage or pursue more lucrative private dances, chose her own choreography, costume and music and determined for which customers she danced" did not 'necessarily mean that its dancers are elevated to the status of independent contractors. Indeed, one could say that the nature of a dancer's job requires some

measure of discretion and flexibility.'" *Schofield v. Gold Club Tampa, Inc.*, Case No. 8:19-cv-3097, 2021 WL 533540 at *5 (M.D. Fla., Feb. 12, 2021)(*citing Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1353 (M.D. Fla. 1997)). Although an adult entertainer may have freedom to work when she wanted for the customers she wants in the club, the Court must determine whether that discretion "merely masks the economic reality of dependence." *Martin v. Priba Corp.*, No. 3:91-cv-2786, 1992 WL 486911, at *3 (N.D. Tex. Nov. 6, 1993).

32.     The *Schofield* court, like others before it, found the material facts determining the control factor included (1) entertainers had to sign in and sign-out, as well as pay an escalating fee based on time of arrival; (2) the club handled entertainer money from the more lucrative VIP dances, and entertainers were only given their money after the club took its portion; (3) the club exercised complete control over the flow of customers into the club; (4) the entertainer was dependent on the club to maintain and operate the club. *Schofield*, 2021 WL 533540 at *6. The entertainer's economic status was 'inextricably linked' to conditions over which the club had complete control, like advertising, customer flow, overall club atmosphere, and facilities maintenance. *Id.*, *citing Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995).

33.     The facts here are show Defendants exercise enormous control over Plaintiffs, which weighs in favor of employee status. Plaintiffs are undisputedly employees under the FLSA.

***Relative Investments***

34.     It is undisputed Defendants spent over $1.2 million or more per year on the basic expenditures, including rent, payroll, utilities, furniture, licensing, and food and beverage. *See* Plaintiffs' Response at ¶26 [Dkt. 80-2, now Dkt. 93]. In comparison, it is undisputed Plaintiffs invest a relatively small sum of only a few hundred dollars a month at most on items particular to their work as adult entertainers, such as dance heels and minimalistic costumes. Plaintiffs'

Response at ¶25 [Dkt. 80-2, now Dkt. 93]. Defendants provide no dollar figures for the Court's calculations into the relative investment facts, focusing instead on tax deductions having nothing to do with investments. *See* Response at ¶25 [Dkt. 89].

35.    Incredibly, Defendants rely upon *Nelson* to state the dancers did not need the club's investments in the facility to perform their work for the Club. *See* Response at ¶43 [Dkt. 89]. This argument is quite simply absurd. The only testimony cited by Defendants is an incomplete statement by Mehmeti that the Club is a restaurant that at times operates without exotic dancers. *See* Response at ¶25 [Dkt. 89]. Mehmeti, however, quickly corrected this misstatement under cross-examination, distinguishing PT's Club as a strip club from his other businesses he claimed were "restaurants." SUPP APPX 114, Memeti Depositions, 5:5-16.

36.    Certainly, a dancer requires HVAC, restroom facilities, a dance space, a place for the customer to sit for a lap dance, music to dance to, all of which are items that undisputedly are paid for by the Club. As the *Johnson*, *Schofield*, and *Reich* courts found, it has universally been determined that a dancer's investment is minor when compared to the club's investment. *Schofield*, 2021 WL 533540 at *7 (*citing Harrell*, 992 F. Supp. At 1350). The Court should be similarly unpersuaded by Defendants' arguments and find this factor clearly weighs in favor of employee status and grant Plaintiffs' partial summary judgment.

***Opportunity for Profit and Loss***

37.    "This argument—that dancers can 'hustle' to increase their profits—has been almost universally rejected." *Schofield*, 2021 WL 533540 at *7 (collecting cases); "[O]nce customers arrive at [a] nightclub, a dancer's initiative, hustle, and costume significantly contribute to the amount of her tips[,]" but the nightclub "has a significant role in drawing customers to its nightclubs by overseeing advertisement, location, business hours, maintenance of facilities,

aesthetics, and inventory of beverages and food." *Johnson v. North Texas Dancers, L.L.C.,* Civil Action No. 7:20-cv-00116, 2021 WL 2077649 at *5 (N.D. Tex., May 24, 2021)(*citing Reich*, 998 F.2d at 328.)(recognizing *Nelson* and distinguishing by acknowledging that the dancer's hustle is limited to the availability of customers and atmosphere in the club, which is controlled by the club). With the club setting the location, business hours, facilities and aesthetics, advertisements and specials on food and beverages, the *Johnson* court found the adult entertainment club was really determining the entertainers' opportunity for profit. *Id.* The *Schofield* court found similarly, noting that all of the costs for the facilities, employees, advertising, food and beverage fell to the club, so all risk of loss fell primarily on the club. *Schofield*, 2021 WL 533540 at *8. The *Schofield* court likewise found the opportunity for profit lied mainly in the control of the flow of customers, which was totally within the power of the club. *Id.*

38.     Like the other adult entertainment clubs before it, Defendants here argue Plaintiffs' testimony about increasing their tips by marketing their skills within the club is the most important part of this factor. See Response at ¶46-47 [Dkt. 89]. Defendants have cited to no other case weighing this factor as Defendants suggest in a summary judgment context. Contrary to *Nelson*, as both the *Johnson* and *Reich* cases hold, this factor is not weighed on the initiative of the entertainers to obtain tips from what scraps are made available to them by the Defendants. No one, including Defendants herein, argues waitresses are independent contractors, yet their hustle and customer service directly impact their opportunity for profit. Much like entertainers, however, they risk little to no loss (because they have very few work expenses) and the real determinate of their profits comes from the advertising, food/beverage availability, and customer flow available. The factor looks at the determination for profit or loss as a whole, not in the bubble inside the club. Plaintiffs' profit and loss is determined by the availability customers, which is primarily

determined by Defendants. This factor weighs in favor of employee status.

### *The Remaining Factors Weigh in Favor of Employee Status*

39.     The remaining factors likewise clearly weigh in favor of employee liability. Courts across the country and in the Fifth Circuit have again unanimously ruled that dancers are not skilled workers under the economic realities test. *See* Plaintiffs' Response at ¶28 [Dkt. 80-2, now Dkt. 93]. Defendants attempt to argue that initiative is the only part of this factor, relying upon Nelson. See Response at ¶48-49 [Dkt. 89]. Defendants then focus on the ability of Plaintiffs to hustle for tips when working within the confines of the club. *Id.* However, the Fifth Circuit acknowledged that "whether the worker has customer rapport is not germane to the analysis of this factor. *Parrish*, 917 F.3d at 386. In fact, the Fifth Circuit rejected the alleged initiative that plaintiffs could ask for more money or advertise their business to defendant's competitors and were not compelled that sort of initiative compelled nonemployee status. *Id.* Instead, the court was focused on the specialized skill at issue, that being directional drilling. *Id.* Such specialized skill is not required for a dancer, or really any prior experience. *See* Plaintiffs' Response at ¶29-30; *see also Johnson*, 2021 WL 2077649 at *5; *Schofield*, 2021 WL 533540 at *9. If they can qualify under the law, they can be dancers. *Id.* This factor easily weighs in favor of employee status.

40.     Likewise, Plaintiffs worked at the PTs for over a year each, which would signify more permanency, especially in light of the transient, short-term nature of adult entertainers' work. *See* Plaintiffs' Response at ¶32-33.  However, this factor has been given little weight in challenges brought by exotic dancers because of the inherently 'itinerant' nature of their work. *Schofield*, 2021 WL 533540 at *9 (*citing McFeeley*, 825 F.3d at 244); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 921 (S.D. N.Y. 2013)(collecting cases). This factor either weighs in favor of employee status or is of little weight and effect in the analysis.

41.     Obviously, adult entertainment is going to be an integral part of a strip club, especially one that does not sell alcohol like Defendants herein because it is all-nude. Defendants set forth no evidence to contradict this fact, and to be sure, that would be difficult considering the title belies its focus – it is a Men's Club. The final factor clearly weighs in favor of employee status.

42.     Weighing all the factors, the Court should hold Plaintiffs are employees of Defendants as a matter of law.

## C.     DEFENDANTS' COUNTERCLAIMS BELIE CASELAW

43.     Plaintiffs' affirmative defenses of offset, unclean hands, contributory liability, illegality of contract, waiver of contractual rights, and ratification[4] argue the Counterclaims and Defendants' Licensing Agreements are themselves violations of the FLSA.[5] Defendants have not provided FLSA caselaw that responds to Plaintiffs' caselaw or arguments and continue to cite to their Licensing Agreement as evidence. Defendants' Counterclaims should be summarily dismissed.

44.     Defendants' reliance on their contract to support their counterclaims is inappropriate. As stated in the Motion, the "focus of the economic realities test is on the economic reality and not the contractual language, else an employer "could easily evade the FLSA by simply confecting such agreements." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 388 (5th Cir. 2019). Defendants' continued reliance on their confected Licensing Agreements belies Parrish's holding and the caselaw cited in response is apposite. Defendants cites to three cases at

---

[4] Despite Defendants' claim otherwise, and their claim of reviewing the docket, Plaintiffs responded to Defendants' Counterclaims and asserted affirmative defenses. Dkt. 11, ¶¶ 26-32.
[5] Plaintiffs asserted FLSA claims and have argued they meet employee status in the Motion. Defendants' argument otherwise belies the reality of litigation. *See* Defendants' Response, ¶ 53.

the motion to dismiss stage and argues:

> the mere fact that Plaintiffs contends that she is an employee entitled to protections under the FLSA, does not make it so, nor does it overcome the court's obligation to take the facts as pled in the counterclaim as true for purposes of a motion to dismiss or the facts as asserted by Defendants and supported by evidence as true for purposes of summary judgment.

Defendants' Response, ¶ 57 (*citing Dixon v. Loc. Express, Inc.,* No. 4:16-CV-2081, 2017 WL 2778245, at *2 (S.D. Tex. June 26, 2017), *Hernandez v. ARC Trading Co.,* No. 3:17-CV-2057-BN, 2018 WL 2017680, at *1 (N.D. Tex. May 1, 2018); *Cordero v. Voltaire, LLC*, 2013 WL 6415667, at *3 (W.D. Tex. Dec. 6, 2013).

45.    Defendants improperly conflate the evidentiary requirements of summary judgment with that of a motion to dismiss, seemingly to avoid analyzing Plaintiffs' evidence and caselaw in the context of the Counterclaims. "The motion to dismiss, brought before any discovery was conducted in the case, is primarily a vehicle to test the sufficiency of the pleadings as to qualified immunity" whereas Plaintiffs have provided arguments supported by evidence after discovery. *Armstrong v. Texas State Bd. of Barber Examiners*, 30 F.3d 643, 644 (5th Cir. 1994).

46.    Defendants argue their Counterclaims are not barred by citing *Beck*, but *Beck* did not involve counterclaims supported by a contract directly violating the FLSA—as is the case here. In that case, the court "[found] that all of Defendant's counterclaims have no bearing or impact on Plaintiff's claims, and Defendant would not be barred by res judicata." *Beck v. Access eForms, LP*, No. 4:16-CV-00985, 2018 WL 295414, at *4 (E.D. Tex. Jan. 4, 2018). *Beck* does not apply here, where Defendants' Counterclaims are supported by a licensing contract Defendants invoke only when one if its dancers brings a lawsuit disputing her independent contractor status.

47.    Defendants' Counterclaims should be denied for the reasons explained in the Motion and because Defendants fail to cite responsive, relevant, or applicable caselaw and rely

solely on their Licensing Agreement.

**D.    DEFENDANTS' HAVE NO RIGHT OR ENTITLEMENT TO ATTORNEYS' FEES IN THIS FLSA ACTION**

1.      Defendants' counterclaim, as applies solely to Plaintiff Layton, requests attorney fees pursuant solely to the licensing agreement. *See* Counterclaim [Dkt. 8]. Defendants urge that they are entitled to attorneys' fees in this case pursuant to state contract law and Plaintiffs' bad faith. *See* Defendants' Response at ¶¶71-72 [Dkt. 89]. Defendants did not assert any counterclaim as to Plaintiff Shipley, so their arguments attempting to advance such are without merit.

2.      As to Plaintiff Layton, Defendants have only argued one basis for fees, that of entitlement to such pursuant to the Licensing Agreement – which agreement's sole purpose is to thwart Plaintiffs' pursuit of federal claims under the FLSA. Bad faith, which Defendants argue ad nauseum, is not a basis for the asserted claim.  It is thus, not a basis for saving such a claim from dismissal.

3.      As Plaintiff Layton previously urged, Defendants are not entitled to attorneys' fees, even if they prevail, per the FLSA. See 29 U.S.C. §216(b); *see also Mach v. Will Cnty. Sheriff, 580 F.3d 495, 501 (7th Cir. 2009).* Such is a further example of why Defendants' counterclaims arising from their contract must be dismissed. If Defendants can enforceably contract around the federal law, then the law becomes toothless. The FLSA is a broad, remedial statute and meant to apply to protect employees. "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). No contract should be enforced to the extent it contravenes the text of the FLSA.

4.      Defendants' counterclaim as to Plaintiff Layton for an award of attorneys' fees

pursuant to the Licensing Agreement should be summarily dismissed. It is improper in the context of a FLSA case to award Defendants' attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Brooke Layton and Ashlyn Shipley respectfully request the Court grant Plaintiffs' Motion for Partial Summary Judgment on Employee Status and Summary Judgment on Defendants' Counterclaims and Affirmative Defenses [Dkt. 82] and grant Plaintiffs any and all further relief to which they may be entitled.

Respectfully submitted,

**ELLZEY & ASSOCIATES, PLLC**

  _/s/ Leigh S. Montgomery_
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh S. Montgomery
Texas Bar No. 24052214
1105 Milford Street
Houston, Texas 77006
Office: (713) 322-6387
Facsimile: (888) 276-3455
jarrett@ellzeylaw.com
leigh@ellzeylaw.com

-and-

Mark A.Alexander
**MARK A. ALEXANDER, P.C.**
Texas Bar No. 01007500
5080 Spectrum, Suite 850E
Addison,TX 75001
Phone: (972) 544-6968
Fax: (972) 421-1500
mark@markalexanderlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on April 21, 2023 a true and correct copy of the foregoing instrument was electronically served on all counsel of record who have appeared and consented to electronic notification *via* CM/ECF, in accordance with the CM/ECF protocols of in the United States District Court for the Northern District of Texas and the Federal Rules of Civil Procedure.

 */s/ Leigh S. Montgomery*
Leigh S. Montgomery